UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID WALLACE,

    Plaintiff,

v.                              Case No. 8:22-cv-2329-VMC-TGW

CAREFREE SHADOWWOOD LLC,

    Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendants Carefree Shadowwood LLC's Motion to Dismiss the Complaint (Doc. # 11), filed on January 10, 2023. Plaintiff David Wallace responded on January 31, 2023. (Doc. # 18). The Motion is denied.

I. **Background**

Since 2015, Mr. Wallace has lived in the Bahia Vista Estates community in Sarasota, Florida. (Doc. # 1 at 2, 4). Defendant Shadowwood owns the community and "sets, approves and enforces [its] policies, rules, regulations and practices." (Id.).

Mr. Wallace "suffered from, had a history of suffering from and still suffers from mental impairments that substantially limit one or more of his major life activities,

1

including depression and serious emotional disturbance." (Id. at 3). Mr. Wallace "relies upon an assistance animal"—a fifteen-pound dog named Zena. (Id. at 3-4). Zena is "not a pet" but rather helps Mr. Wallace "in coping with his disabilities by providing companionship and emotional support." (Id. at 4).

"In April of 2022 Zena was attacked and injured by an unleashed dog within the community." (Id.). That dog was owned by Alison Smith, who also lived in the community. (Id.). At Shadowwood's direction, Ms. Smith rehomed her dog. (Id.). But Ms. Smith did not reimburse Mr. Wallace for Zena's veterinary expenses incurred because of the attack, which caused "tensions" between Mr. Wallace and Ms. Smith. (Id.).

On August 19, 2022, Mr. Wallace had an argument with Ms. Smith over the unreimbursed veterinary expenses. (Id.). Zena was with Mr. Wallace; Ms. Smith was accompanied by another one of her dogs. (Id. at 5). During the argument, Mr. Wallace "accidentally dropped Zena's leash," and Zena and Ms. Smith's dog "had an altercation." (Id.). Ms. Smith "was scratched by one of the two dogs while attempting to separate the dogs." (Id.).

Two weeks later, Mr. Wallace received a "Statutory Notice to Cure demanding that [he] remove Zena within 7 days."

2

(Id.). But no one from Shadowwood interviewed Mr. Wallace to get "his side of the story regarding the August 19, 2022, incident." (Id.). Nor did Shadowwood interview another resident of the community who had witnessed the altercation between the dogs. (Id.). "Despite being aware of Zena's status as an emotional support animal, Shadowwood did not conduct an individual evaluation regarding whether Zena poses a direct threat to other residents or their property." (Id.). Nor did Shadowwood "explore whether there were measures such as muzzling Zena or designating an alternative walking area that could be taken to allow [Mr. Wallace] to remain in the Bahia Vista Estates community with Zena," despite knowing that Zena was "an emotional support animal." (Id. at 5-6).

On September 1, 2022, Mr. Wallace's brother, Jack Wallace, sent a letter to Shadowwood "asking that Zena be allowed to stay and reiterating that Zena is an emotional support animal for" Mr. Wallace. (Id. at 6). In the letter, which is attached to the complaint, Jack Wallace explained that "Zena would be kept exclusively on [Mr. Wallace's] property in the future" and Mr. Wallace "would not go anyplace near Allison Smith's property and would avoid her at all costs." (Id.; Doc. # 1-1). Shadowwood did not respond to Jack Wallace's letter. (Doc. # 1 at 7).

On September 19, 2022, Mr. Wallace "was hospitalized and Zena was removed from Bahia Vista Estates." (Id.). "Nonetheless, on or about September 30, 2022 Shadowwood caused a Statutory Thirty (30) Day Notice to Vacate posted on [Mr. Wallace's] dwelling informing [him] that his lease is terminated and he has 30 days to vacate his home." (Id.).

According to the complaint, Shadowwood has made Mr. Wallace's "dwelling in Bahia Vista Estates unavailable to him by forcing him to [choose] between his home and his assistance animal and serving [him] a Statutory Thirty (30) Day Notice to Vacate." (Id. at 8). Mr. Wallace also alleges that Shadowwood failed to accommodate him by refusing to consider Jack Wallace's request that Zena be allowed to continue living with Mr. Wallace under certain "proposed mitigative measures" to accommodate Mr. Wallace's disability. (Id. at 11-12).

Mr. Wallace initiated this Fair Housing Act ("FHA") case on October 11, 2022, asserting claims for "making a dwelling unavailable because of a handicap" (Count I) and "failure to accommodate" (Count II). (Doc. # 1). Now, Shadowwood moves to dismiss the complaint. (Doc. # 11). Mr. Wallace has responded (Doc. # 18), and the Motion is ripe for review.

4

**II.  Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

5

### III. Analysis

#### A. Making a Dwelling Unavailable

Again, in Count I, Mr. Wallace asserts an FHA claim for "making a dwelling unavailable because of a handicap." (Doc. # 1 at 9-10).

"As relevant here, section 3604(f)(1) [of the FHA] makes it unlawful to discriminate in the rental of, or to otherwise make unavailable or deny, a dwelling because of a disability of the renter or a person associated with the renter." Hunt v. Aimco Properties, L.P., 814 F.3d 1213, 1222 (11th Cir. 2016) (citing 42 U.S.C. § 3604(f)(1)). The Eleventh Circuit has acknowledged that, "[b]efore discovery, a plaintiff may not be able to plead all the facts necessary to prove that there was discrimination based on the disability." Id. "For this reason, it is not necessary to state in the complaint, for example, that the housing remained available or was secured by an individual outside of the protected class. But a complaint must allege that the adverse action was taken *because of* a disability and state the facts on which the plaintiff relies to support that claim." Id.

Shadowwood argues that Count I should be dismissed as implausible because the complaint's allegations contradict Mr. Wallace's legal claims. First, Shadowwood contends that

6

Mr. Wallace fails to sufficiently allege that his lease was terminated because of his disability. (Doc. # 11 at 3-4). According to Shadowwood, the complaint's allegations establish that it "terminated [Mr. Wallace's] lease for failing to comply with Shadowwood's August 31, 2022 lease violation notice requesting his dog's removal" after his dog, while off leash, caused an altercation with another dog. (Id.).

Also, according to Shadowwood, "there are absolutely no facts alleged that Wallace was treated differently because of his disability" and, in fact, the complaint "points out [Mr.] Wallace was treated the same as" Ms. Smith, who was earlier required to remove one dog from her home after that dog had started an altercation with Mr. Wallace's dog in April 2022. (Id. at 5). Finally, Mr. Wallace admits in the complaint that "he did not remove his dog until September 19, 2022, beyond the seven days allotted in Shadowwood's August 31 notice to cure lease violation," thus resulting in Shadowwood's evicting Mr. Wallace. (Id.).

At the motion to dismiss stage, the Court disagrees with Shadowwood. Although Shadowwood has required tenants to remove dogs in the past, Mr. Wallace has plausibly alleged that Shadowwood made housing unavailable to him because of

7

his disability. As Mr. Wallace alleges, the effect of Shadowwood's notice to remove Zena was to "forc[e] him to [choose] between his home and his assistance animal." (Doc. # 1 at 8); see also Smith v. Powdrill, No. CV 12-06388 DDP RZX, 2013 WL 5786586, at *9 (C.D. Cal. Oct. 28, 2013) (denying summary judgment and stating "Defendants' issuance of a 3-Day Notice in response to Plaintiff's request for an accommodation for her disability [to keep an emotional support dog], in combination with Defendants' other communications, had the effect of making Plaintiff choose between living in the apartment and having access to a medically necessary companion animal. These actions constituted 'mak[ing] unavailable or deny[ing]' the apartment unit to Plaintiff under § 3604(f)(1)(A)."); Carlson v. Sunshine Villas HOA, Inc., No. 2:18-cv-1-JES-MRM, 2018 WL 2317820, at *4 (M.D. Fla. May 22, 2018) (denying motion to dismiss and holding that the defendant landlord's attempts to evict a disabled tenant halfway through her monthly lease due to her request for a service dog "attempted to make housing unavailable").

Indeed, in a case decided at the motion to dismiss stage, the Eleventh Circuit was faced with the question of whether a defendant housing complex's decision not to renew the lease

8

of the plaintiff mother of a disabled son was plausibly alleged to be "because of" the son's disability of Down Syndrome. Hunt, 814 F.3d at 1221-22. There, the defendant stated it was not renewing the plaintiff's lease based not on the son's disability but on his actions, which included aggressive and confrontational behavior, threatening and harassing management employees, and stealing toilet paper rolls from the complex's restrooms. Id. at 1219. Although this conduct by the disabled son was troublesome, the Eleventh Circuit nevertheless held that plaintiff had plausibly alleged that defendant's decision not to renew the lease was because of the son's disability. Id. at 1222 ("[T]he Hunts pled that Aimco took adverse action against them because of Karl's disability. The Hunts alleged that 'Aimco treated Karl Hunt differently solely because of his disability and did not want him residing at Reflections.' [] Even though Dyan described to Ms. Jackson how Karl's disability could cause misunderstandings such as the perceived threat, Ms. Jackson disregarded her explanations and continued the eviction process." (citation omitted)).

 The reasoning of Hunt applies here. While Shadowwood maintains that it (1) required Mr. Wallace to remove Zena from the property based on Zena's causing a dog fight that

9

injured Ms. Smith and (2) eventually evicted Mr. Wallace because he failed to remove Zena by the deadline, Mr. Wallace has alleged that these actions were taken because of his disability. (Doc. # 1 at 1-2, 9-10). In support, Mr. Wallace emphasizes the complaint's allegations that Shadowwood knew that Zena was an assistance animal and that Mr. Wallace needed to live with Zena because of his disability. (Id. at 9). Yet, according to the complaint, Shadowwood "failed to make an individual assessment . . . to determine whether Zena truly posed a significant threat, much less any threat," and "failed to explore less drastic alternatives than removing the Zena from the community" before requiring Mr. Wallace to remove Zena. (Id. at 9). The complaint also suggests that the dog fight between Zena and Ms. Smith's second dog was less severe than the dog fight between Zena and Ms. Smith's first dog, which had resulted in Zena's injuries requiring veterinary treatment. (Id. at 4-5).

These factual allegations plausibly suggest that Shadowwood acted "because of" Mr. Wallace's disability, rather than based on Zena's involvement in the second fight. See Hunt, 814 F.3d at 1222 (noting that "[b]efore discovery, a plaintiff may not be able to plead all the facts necessary to prove that there was discrimination based on the

10

disability" and requiring only that a plaintiff "allege that the adverse action was taken *because of* a disability and state the facts on which the plaintiff relies"). Thus, the Motion is denied as to Count I. However, Shadowwood may raise its arguments again at the summary judgment stage or trial. See Friedel v. Park Place Cmty. LLC, 747 F. App'x 775, 776 (11th Cir. 2018) (affirming jury verdict for defendant in FHA case in which an emotional support dog was banished from housing complex for biting another dog and request for accommodation was denied on defendant's affirmative defense that the dog posed a direct threat to the health or safety of others and no reasonable accommodation would have eliminated or acceptably minimized the risk the dog posed to other residents).

### B. Failure to Accommodate

In Count II, Mr. Wallace asserts an FHA claim for failure to accommodate his disability. (Doc. # 1 at 10-11). Under Section 3604(f)(3) of the FHA, a housing provider must "make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

"To assert a failure to reasonably accommodate claim under section 3604(f)(3), a plaintiff must plead four elements: (1) the plaintiff is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) the plaintiff requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the plaintiff an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the accommodation." Hunt, 814 F.3d at 1225.

Shadowwood argues first that Mr. Wallace's "request to keep his dog at Shadowwood is not a request for an 'accommodation in rules, policies, practices, or services' contemplated by § 3604(f)(3)" because Mr. Wallace "did not request an exception to Shadowwood's rules or policies" and instead "asked Shadowwood to overlook injury to another tenant resulting from his failure to control his aggressive animal and that animal's resulting behavior." (Doc. # 11 at 7). Next, Shadowwood maintains that Mr. Wallace's "request to keep his dog on Shadowwood's property is not reasonable 'on its face' given that Shadowwood 'bent over backwards' for [Mr.] Wallace in the past," as Jack Wallace stated in his letter to Shadowwood. (Id. at 10). According to Shadowwood,

12

Mr. Wallace "is not seeking a *reasonable* accommodation but simply his *preferred* accommodation, which is not required under the law." (Id.).

The Court disagrees with Shadowwood. First, Shadowwood fails to cite relevant case law for the proposition that Mr. Wallace's request to keep Zena at his home, made through his brother's letter to Shadowwood, was not a request for an "accommodation in rules, policies, practices, or services" under the FHA. Furthermore, Mr. Wallace has plausibly alleged that he sought to have Shadowwood make a reasonable accommodation to its practice of having dogs who cause altercations removed from the community by allowing him to keep Zena. Indeed, he plausibly alleged that Shadowwood had at least a practice, if not a policy, of banishing dogs that caused fights with other dogs based on its previous requirement that Ms. Smith rehome the dog that had attacked Zena in April 2022. (Doc. # 1 at 4).

Second, as to the facial reasonableness of Mr. Wallace's requested accommodation, the Court will not draw inferences against Mr. Wallace as Shadowwood would have the Court do. At the motion to dismiss stage, the Court is required to take as true the allegations of the complaint and draw all reasonable inferences in Mr. Wallace's favor. Furthermore, the Court is

13

mindful that "[g]enerally, the question of whether a proposed accommodation is reasonable is a question of fact." Jeffrey O. v. City of Boca Raton, 511 F. Supp. 2d 1328, 1338 (S.D. Fla. 2007) (citation omitted).

Here, Mr. Wallace has plausibly alleged that he was seeking a reasonable accommodation to Shadowwood's practice of requiring a dog leave the community after an altercation in light of Mr. Wallace's "disability related need to reside with Zena for emotional support." (Doc. # 1 at 11-12). He further alleges that there were sufficient "mitigative" measures available, such as allowing Mr. Wallace to keep Zena on the condition that Zena not leave Mr. Wallace's property. (Id. at 11). He also alleges that "Zena does not pose a significant threat to other residents of Bahia Vista Estates or their property." (Id. at 9). Although some of these allegations are in tension with a portion of Jack Wallace's letter, which states that Mr. Wallace had previously "been told" not to take Zena off his property or allow her off-leash but he "did not pay attention" (Doc. # 1-1), the letter does not contradict the allegations of the complaint.

Thus, at this stage, Mr. Wallace has sufficiently alleged that his request to keep Zena at his home under certain conditions was a reasonable accommodation, which

14

Shadowwood denied. The Motion is denied as to Count II. However, Shadowwood may raise its arguments about the reasonableness of Mr. Wallace's request for accommodation at summary judgment.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Carefree Shadowwood LLC's Motion to Dismiss the Complaint (Doc. # 11) is **DENIED.**

(2) Shadowwood's answer to the complaint is due within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of April, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE